```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

    v.                                       Crim. Action No. 1:22-CR-52
                                                               (Judge Kleeh)

**LANCE KURETZA,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

Pending with the Court are motions in limine to allow and preclude certain evidence from the jury's purview. ECF Nos. 48, 49, 53, 54, 58. The motions are fully briefed, and the Court heard argument and received evidence on May 19, 2023, at the Clarksburg, West Virginia, point of holding court. The motions are ripe for consideration and decided herein.

    **I.**    **Factual Background**

On January 20, 2018, Defendant Lance Kuretza ("Kuretza" or "Defendant") and four other deputies with the Monongalia County Sheriff's Office ("MCSO") responded to a call from the Residence Inn in Morgantown, West Virginia, after the front desk clerk reported a disturbance. In the first hotel room, the deputies found five intoxicated friends who had been in a loud disagreement. They were visiting Morgantown for a West Virginia University basketball game. A sixth friend, Q.G., a WVU graduate, had gone to sleep in

the second hotel room prior to the argument. The deputies instructed the five friends to leave the hotel. No arrests were planned, and only one deputy patted anyone down for a weapon. As the five friends were preparing to leave, Kuretza ordered one of them to open the second hotel room where Q.G. was sleeping. The friend complied, and Kuretza and another deputy entered the second hotel room.

Inside the second hotel room, Kuretza found Q.G. asleep on the bed. Kuretza began trying to wake Q.G. by hitting his feet with a flashlight and pulling him out of bed by his arm. Q.G., who was intoxicated from alcohol and marijuana, appeared half-asleep as he batted at Kuretza with one hand, believing Kuretza was a friend trying to wake him. In swatting at Kuretza, Q.G. made contact with Kuretza's chest area. Kuretza's body worn camera shows Q.G.'s arm retreat, and Kuretza can be heard saying, "you just fucked up."[1] Kuretza's camera then turned off.

Kuretza used force on Q.G., significant portions of which were captured on the body worn cameras of the other deputies.[2] Among other actions, Kuretza used pepper spray on Q.G. and applied knee strikes to Q.G.'s head area, both while Q.G. was handcuffed and otherwise subdued by two other deputies. Q.G. pleaded

---

[1] The parties have not provided this video evidence to the Court.
[2] The parties have not provided this video evidence to the Court.

repeatedly for help during the interaction. Kuretza has been suspended from duty but remains a deputy with MCSO.

It is based on these facts that a grand jury returned an Indictment against Kuretza on August 17, 2022, alleging two counts. Count 1 – Deprivation of Rights under Color of Law in violation of 18 U.S.C. § 242, charges that

> [o]n or about January 20, 2018 in Monongalia County, within the Northern District of West Virginia, **LANCE KURETZA**, then a Deputy Sheriff with the Monongalia County Sheriff's Office, while acting under color of law, willfully deprived Q.G., a person known to the Grand Jury, of his right, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable seizures, by punching and elbowing Q.G. in the face, striking Q.G. and spraying Q.G. with pepper spray after Q.G. was handcuffed, and kneeing Q.G. while escorting him. The offense included the use of a dangerous weapon and resulted in bodily injury to Q.G.

Count 2 – Destruction, Alteration, and Falsification of Records in violation of 18 U.S.C. § 1519, charges that

> [o]n or about January 21, 2018 in Monongalia County, within the Northern District of West Virginia, **LANCE KURETZA**, in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly falsified and made a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of that matter. Specifically, **KURETZA** falsified and made a false entry in his Use of Force Report for Call Number 18-0002459 for his use of force against Q.G. by: 1) falsely stating

>           that he sprayed Q.G. with pepper spray before
>           Q.G. was handcuffed, 2) omitting that he
>           sprayed Q.G. with pepper spray after Q.G. was
>           handcuffed, and 3) omitting that he struck
>           Q.G. after Q.G. was handcuffed.

ECF No. 1.

##   II.  Legal Standard

"Evidence is relevant if [] it has any tendency to make a fact more or less probable than it would be without the evidence[,] and [] the fact is of consequence in determining the action." FED. R. EVID. 401. Generally, relevant evidence is admissible, and irrelevant evidence is not. FED. R. EVID. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Generally, character evidence is inadmissible. FED. R. EVID. 404(a). Rule 404(b) of the Federal Rules of Evidence provides, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Exceptions to this rule include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

4

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

The Fourth Circuit Court of Appeals adheres to a four-step test to determine the admissibility of "prior bad acts evidence" under Rule 404(b): the evidence must (1) be relevant and not offered to establish general character; (2) be probative of the essential claim; (3) be reliable; and (4) be able to pass the Rule 403 balancing test. United States v. Hall, 858 F.3d 254, 266 (4th Cir. 2017) (citing United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)). "Rule 404(b) is an inclusive rule that allows admission of evidence of other acts relevant to an issue at trial except that which proves only criminal disposition." United States v. Hernandez, 975 F.2d 1035, 1038 (4th Cir. 1992) (quotation omitted). "Whether to admit evidence under Rule 404(b) is within the discretion of the district court[.]" United States v. Watford, 894 F.2d 665, 671 (4th Cir. 1990).

### III. Discussion

The Government filed its *Notice of Intent to Use Rule 404(b) Evidence and Motion in Limine to Admit Rule 404(b) Evidence*. ECF No. 48. The Government seeks to introduce other uses of force by Kuretza and a positive drug screen while under pretrial release supervision indicating the use of illegal substances, should the defense open the door to its use at trial. Id. Kuretza filed *Defendant's Motion in Limine* to preclude Rule 404 evidence from trial. ECF No. 58. Also pending are *Government's Notice of Lay*

*Testimony and Motion to Exclude Testimony on Ultimate Issues* [ECF No. 53] and *United States' Motions in Limine* [ECF No. 54].

   a. **Rule 404 Motions in Limine [ECF Nos. 48, 58]**

The Government seeks to introduce evidence related to one other use of force by Kuretza for the purpose of proving the element of willfulness at trial. FED. R. EVID. 404(b). It also moves to introduce evidence of Kuretza's steroid use as rebuttal evidence pursuant to Rule 404(a)(2)(A) of the Federal Rules of Evidence. For the reasons discussed below, the motions in limine are **GRANTED in part** and **DENIED in part**. ECF Nos. 48, 58.[3]

   1. **J.G. incident - April 26, 2018.**

The Government moves to introduce a subsequent use of force by Kuretza on April 26, 2018, involving a victim named J.G. J.G. was awaiting booking at the MCSO police station while Kuretza was on duty. Kuretza placed J.G. in a "pretzel hold" after he was restrained in handcuffs and leg shackles and repeatedly contorted J.G.'s body while demanding an apology.

The Government seeks to introduce testimony by MCSO Transport Officer Ty Tennant ("Tennant"). At the May 19, 2023 hearing, Tennant testified about the April 2018 incident. Tennant was on

---

[3] The Government withdrew its motion to admit Rule 404(b) evidence related to an incident in November 2013 involving a victim named "C.O." ECF No. 48. The parties stipulated to the introduction of the incident on February 6, 2016, involving a victim named T.T.

shift in the control room when a scuffle ensued. Tennant rushed to booking upon hearing loud noises and found J.G. and officers involved in a skirmish on the ground. Punches were delivered to J.G. which caused him to bleed. J.G. was restrained on his stomach and in leg shackles when Kuretza placed him in a pretzel hold and demanded he apologize to Kuretza because J.G. "hurt [Kuretza's] brother." When J.G. did not apologize, Kuretza applied more force. J.G. was taken to the padded cell where Kuretza directed J.G. three times to comply without giving any time to comply. EMS was called.

Tennant testified that under the MCSO use of force policy, officers are not permitted to use force to punish, and force should only be used to control a subject. With this in mind, and as a witness to the event, Tennant wrote and submitted a report detailing the use of force.

The Government is required to prove at trial beyond a reasonable doubt that Kuretza (1) acted under color of state law and (2) willfully deprived Q.G. of his constitutional right. 18 U.S.C. § 242. The Government asserts there is a fact question for the jury to determine whether Kuretza delivered knee strikes to Q.G.'s head during the hotel raid and offers the April 2018 evidence involving J.G. as circumstantial evidence that Kuretza acted willfully in January 2018. Kuretza objects to the admission

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

of the evidence, arguing the evidence is irrelevant and any probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403.

The Fourth Circuit has held that subsequent conduct may be highly probative of prior intent. See United States v. Briley, 770 F.3d 267, 275 (4th Cir. 2014) ("Rule 404(b) permits the admission of evidence of not only prior but also subsequent acts."); United States v. Hadaway, 681 F.2d 214, 217-18 (4th Cir. 1982) ("That one has thought in a particular illegal way over a period of time is evidence that one's thought patterns had already been so developed and were so operating on another previous occasion.").

The Government relies on United States v. Mohr, 318 F.3d 613 (4th Cir. 2003). In Mohr, the Fourth Circuit upheld the district court's decision to admit Rule 404(b) evidence involving a subsequent act. Id. at 620. The defendant in Mohr was a police officer convicted of a § 242 charge. Id. at 617. Officer Mohr released her police dog on an arrestee who suffered injuries as a result, and the jury was to determine whether the release of the K-9 was an objectively reasonable use of force. Id. at 616. At trial, the prosecution offered evidence of a similar subsequent use of force by Mohr, specifically that Mohr released her K-9 on a different subject who was sleeping in a hammock. Id. at 618. The district court admitted the subsequent use of force evidence

because it was probative of Mohr's willfulness and the evidence suggested that "on at least one other occasion, Mohr used her police dog in a way that recklessly disregarded the risk that her actions would violate a citizen's right to be free from the use of excessive force." Id. at 619.

Here, Rule 404(b) applies to the disputed evidence even though the J.G. incident occurred approximately three months after the events alleged in the Indictment. The Government submits the J.G. evidence would prove absence of mistake or lack of accident under Rule 404(b)(2). However, essential to all admissibility tests, including the Rule 404(b) test under Hall, the J.G. evidence is irrelevant and, therefore, inadmissible. Unlike in the Mohr case, here, Kuretza's subsequent use of force against J.G. is dissimilar to the use of force exhibited against Q.G. The events are divergent such that the relevance of J.G.'s incident is low if existing at all, and the risk of prejudice far outweighs any probative value. During the J.G. incident at the police station, Kuretza used force by applying a pretzel hold to J.G. while demanding an apology. Kuretza is not alleged to have delivered knee strikes nor did he administer pepper spray to J.G.

Q.G.'s incident is quite different. Q.G. was not an inmate at the police station; instead, Q.G. was alone and asleep in his hotel room only to wake up to Kuretza's prodding. The interaction

escalated to Kuretza allegedly delivering knee strikes to Q.G.'s head and deploying pepper spray, all while Q.G. was handcuffed.

The only similarities between J.G.'s and Q.G.'s incidents are that they were both restrained by handcuffs and bled as a result of their assaults. Because the type of force in question with Q.G. (knee strikes) is different than the type of force used on J.G. (pretzel hold), the evidence of the J.G. incident has no tendency to make a fact – here, whether Kuretza delivered knee strikes to Q.G.'s head - more or less probable than it would be without the evidence. FED. R. EVID. 401. All J.G. evidence is irrelevant and seemingly shows Kuretza's general character rather than his knowing and intentional use of excessive force and, therefore, must be excluded. FED. R. EVID. 404(b).

Because the subsequent force evidence involving J.G. has no tendency to make a fact more or less probable than it would be without the evidence, and any glimmer of probative value is substantially outweighed by a danger of Rule 403 factors, the evidence must be excluded. Because the Government failed to establish the evidence is relevant and not offered to establish general character, the Court **FINDS** evidence of the J.G. incident on April 26, 2018, inadmissible at trial. The evidence does not prove willfulness nor does it relate to Kuretza's motive, opportunity, preparation, plan, knowledge, identity, absence of

mistake, or lack of accident in allegedly delivering knee strikes to Q.G. The Government's motion in limine [ECF No. 48] is **DENIED in part** on this issue and, for the same reasons, the Defendant's motion in limine [ECF No. 58] is **GRANTED in part.**

**2. Steroid Use – November 8, 2022**

The Government moves to admit [ECF No. 48] and Kuretza seeks to exclude [ECF No. 58] evidence of Kuretza's positive drug screen to rebut evidence that he is a law-abiding law enforcement officer. Kuretza tested positive for anabolic steroids on November 8, 2022, against his conditions of pretrial release. Kuretza moves to exclude this evidence because it is irrelevant and prejudicial to him. ECF No. 58. Notably, Kuretza does not intend to present character evidence at trial pursuant to Rule 404(a)(2)(A); therefore, the Government's use of this evidence would be impermissible. Id.

"[A] defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." FED. R. EVID. 404(a)(2)(A). This rule "permits the government to offer character evidence only after the defendant has 'opened the door' by offering good character evidence about himself." United States v. Cowden, No. 5:16CR24, 2016 WL 5794763, *4 (N.D.W. Va. Oct. 4, 2016).

Case 1:22-cr-00052-TSK-MJA   Document 72   Filed 07/05/23   Page 12 of 17   PageID #: 415

**USA V. KURETZA**                                                                  **1:22cr52**

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

Kuretza has indicated he does not intend to introduce good character evidence about himself pursuant to Rule 404(a)(2)(A), particularly evidence demonstrating that he is a law-abiding law enforcement officer. At the hearing, the parties agreed that absent Kuretza opening the door, rebuttal evidence of this kind offered by the Government is precluded. Therefore, absent the defendant opening the door, evidence of Kuretza's November 8, 2022, positive drug screen is **PRECLUDED**. If at any point during the jury trial the Government believes Kuretza opened the door, the parties are **DIRECTED** to request the Court for a bench conference. The Government's motion in limine [ECF No. 48] and Kuretza's motion in limine [ECF No. 58] are both **GRANTED** on this issue.

b. **United States' Motions in Limine [ECF No. 54]**

For the same reasons discussed in Section III.a.2, evidence of Kuretza's general good character is **INADMISSIBLE**. It is indisputable that Rule 404(a)(2)(A) of the Federal Rules of Evidence applies only to a "pertinent" character trait of the defendant. The parties shall conduct trial and introduce evidence within the bounds of the Federal Rules of Evidence. Therefore, over no objection by Kuretza, the Court **GRANTS** the Government's motion in limine [ECF No. 54] on the issue of general good character evidence of Kuretza, and the parties are **DIRECTED** to

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

move for admission of evidence within the bounds of the Federal Rules of Evidence throughout the jury trial.

Likewise, evidence relating to possible penalties upon conviction is **INADMISSIBLE** at trial.

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. . . [P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

Shannon v. United States, 512 U.S. 573, 579 (1994). At its core this evidence is irrelevant to the jury's determination of guilt or innocence in a criminal case. Rogers v. United States, 422 U.S. 35, 40 (1975). Therefore, pursuant to the Federal Rules of Evidence, applicable binding precedent, and the parties' agreement reached at the hearing, the parties are prohibited from introducing evidence or argument regarding the possible penalties Kuretza faces upon a conviction. The Government's motion in limine [ECF No. 54] is **GRANTED** on this issue.

Finally, pursuant to the parties' agreement, Federal Rules of Evidence, and binding Fourth Circuit case law, evidence relating to the outcome of the Internal Affairs Investigation is likewise **PROHIBITED** from the jury's purview. At the hearing, the parties agreed that evidence related to the internal affairs investigation

conducted by MCSO following the Q.G. incident is inadmissible at trial. See Rabon v. Great Sw. Fire Ins. Co., 818 F.2d 306, 309 (4th Cir. 1987) (finding evidence related to a fire investigation is "highly prejudicial" when offered during trial on related criminal arson charges because the evidence "goes directly to the principal issue before the jury."). The Court agrees and **GRANTS** the motion in limine on this issue. ECF No. 54.

c. **Government's Notice of Lay Testimony and Motion to Exclude Testimony on Ultimate Issues [ECF No. 53]**

To show willfulness, the Government intends to offer police officer lay testimony about Kuretza's police training and MCSO's use of force policy. The Government also intends to offer the evidence to support its burden for Count Two, Destruction, Alteration, and Falsification of Records in violation of 18 U.S.C. § 1519.

First, Sergeant Curt Thomas ("Sgt. Thomas"), retired from MCSO, intends to testify regarding the police training and policies. As the use of force reviewer for MCSO, Sgt. Thomas reviewed Kuretza's use of force statement for the Q.G. incident, as well as portions of body-worn camera footage of the event before signing off on the use of force. Sgt. Thomas re-reviewed the Q.G. report and video footage months later and concluded the use of force depicted in the video was inconsistent with MCSO policy,

which was opposite of his original finding. Sgt. Thomas intends to testify regarding the inconsistencies found in Kuretza's prior report and his alleged obstruction charged in Count 2. Specifically, Sgt. Thomas will testify to Kuretza's false statements that he used pepper spray on Q.G. prior to Q.G. being handcuffed and materially omitted that he delivered at least one knee strike to Q.G.'s head or head area after Q.G. was handcuffed and incapacitated by pepper spray. The Government requests an order in limine precluding (1) speculative opinion testimony by lay witnesses about Kuretza's actions during the Q.G. incident who were unassociated with the Q.G. incident, and (2) testimony on the reasonableness of Kuretza's use of force.

Under Rule 701 of the Federal Rules of Evidence, lay witness law enforcement officers are permitted to testify about (1) whether the force used by another officer that they observed was consistent with that policy and training, and (2) whether the force served a legitimate law enforcement purpose. United States v. Perkins, 470 F.3d 150, 155-56 (4th Cir. 2006).

> Under 18 U.S.C.A. § 242, courts employ an "objective reasonableness" standard to assess an officer's use of force. *See Mohr*, 318 F.3d 613, 623 (4th Cir. 2003). This standard requires the jury to determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642

15

> (4th Cir. 1996). Clearly, then, the word "reasonable" in the § 242 context has a specific legal meaning.

Perkins, 470 F.3d at 159.

Over no objection by the defendant, the motion is **GRANTED** [ECF No. 53], and the Government will be permitted to offer lay witness law enforcement testimony in this limited manner. The Government is **PROHIBITED** from eliciting whether the force used by Kuretza was objectively reasonable. Pursuant to Federal Rule of Evidence 701, Sgt. Thomas, or any other officer testifying, is permitted to testify about his eyewitness observations of the Q.G. incident and particularized experience as a police officer. Sgt. Thomas and all other testifying officers are **PRECLUDED** from testifying about "reasonableness" as this would be indistinguishable from expert testimony under Rule 702. Perkins, 470 F.3d at 156.

### IV. Conclusion

For all the reasons consistent with this Memorandum Opinion and Order, *Notice of Intent to Use Rule 404(b) Evidence and Motion in Limine to Admit Rule 404(b) Evidence* [ECF No. 48] is **GRANTED in part** and **DENIED in part**; *Defendant's Motion in Limine* [ECF No. 58] is **GRANTED in part** and **DENIED in part**; *United States' Motions in Limine* [ECF No. 54] is **GRANTED**; and *Government's Notice of Lay Testimony and Motion to Exclude Testimony on Ultimate Issues* [ECF

No. 53] is **GRANTED**. The Motions [ECF Nos. 48, 58] are **DENIED AS MOOT** as to the incident involving T.T. pursuant to the parties' stipulation, and the incident concerning C.O. due to the United States' withdrawal.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

**DATED:** July 5, 2023

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA